UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **GARAGESOCIAL, INC.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 24-13187-BEM |
| **THE HAGERTY GROUP, LLC, et al.,** | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS**

**MURPHY, J.**

This is a dispute concerning a trademark.  Plaintiff Garagesocial, Inc. has filed suit against The Hagerty Group, LLC and Member Hubs Holdings LLC (together, "Defendants"), alleging generally that Defendants have willfully infringed Plaintiff's registered trademark.  As amended, the complaint asserts claims under the Lanham Act and Massachusetts statutory and common law.

For the reasons set forth below, this Court lacks personal jurisdiction over Defendants, and Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) will therefore be granted.

**I.    Background**

   **A.    Factual Background**

The Court draws the following facts from the amended complaint and accepts them as true for purposes of the instant motion.

Plaintiff Garagesocial, Inc. ("Garagesocial") is a Delaware corporation with its principal place of business in Massachusetts.  Dkt. 15 ("Am. Compl.") ¶ 15.  Defendants The Hagerty

Group, LLC ("Hagerty") and Member Hubs Holdings LLC ("Member Hubs") are both Delaware limited liability companies with their principal places of business in Michigan. *Id.* ¶¶ 16–17.

  The complaint alleges that Garagesocial has established a well-known and successful online car enthusiast community and offers a broad spectrum of social networking services for car enthusiasts throughout the United States via its website, www.garagesocial.com. *Id.* ¶ 18. The complaint further asserts that for over a decade, Garagesocial's services have been consistently and extensively advertised, promoted, offered, and used in connection with the "GARAGESOCIAL" trademark (the "Mark"). *Id.* ¶ 19. Garagesocial is the owner of U.S. Trademark Registration No. 4,898,901 for the Mark. *Id.* ¶ 20.

  Hagerty, according to the complaint, is a large insurance company that owns, operates, and controls the website www.garageandsocial.com, which Garagesocial describes as the "Infringing Website." *Id.* ¶ 24. The complaint further alleges that in March 2020, Defendants filed for the trademark "HAGERTY GARAGE + SOCIAL" (the "Infringing Mark") with the United States Patent and Trademark Office to use in connection with the Infringing Website, *id.* ¶ 23, and that Hagerty owns the U.S. Trademark Registration No. 6,487,271 and licenses the Infringing Mark to Member Hubs, *id.* ¶ 24. The Infringing Website, the complaint alleges, offers a variety of services related to the automotive industry, including cars for sale, an exclusive social membership, social events, test drives of unique cars for members and car enthusiasts, and garage storage for exotic cars. *Id.* ¶ 24. According to the complaint, Defendants advertise, market, promote, provide, and otherwise offer online, automotive-enthusiast-related services (the "Infringing Services") under the Infringing Mark with the Infringing Website, *id.* ¶ 27, and the similarity of the Infringing Mark, Infringing Website, and Infringing Services to Plaintiff's Mark and services misleads, deceives,

and confuses both suspecting and unsuspecting customers by creating a false association that Defendants' services are affiliated with, approved by, and licensed from Plaintiff, *id.* ¶ 29.

### B. Procedural Background

Garagesocial commenced this action on December 26, 2024. Dkt. 1. Hagerty thereafter filed a motion to dismiss, Dkt. 12, which the Court denied as moot, Dkt. 16, following Garagesocial's filing of its amended complaint, Dkt. 15. As amended, the complaint asserts seven counts against Hagerty and Member Hubs: trademark infringement in violation of section 32(a)(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a) (Count 1); trademark infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a) (Count 2); trademark dilution in violation of 15 U.S.C. § 1125(c) (Count 3); trademark dilution in violation of Mass. Gen. Laws ch. 110H, § 13 (Count 4); trademark infringement in violation of Massachusetts common law (Count 5); unfair competition in violation of Massachusetts common law (Count 6); and unfair trade practices under Mass. Gen. Laws ch. 93A (Count 7). Following the filing of the amended complaint, both Defendants filed a second motion to dismiss that is now before the Court. Dkt. 20.

## II. Analysis

Defendants argue that (i) Plaintiff's claims must be dismissed for failure to distinguish between the conduct of Defendants so as to put Defendants on proper notice; (ii) Plaintiff's claims against Hagerty must be dismissed because Hagerty is not a proper party; (iii) Plaintiff's claims must be dismissed because the Court lacks personal jurisdiction over both Defendants; (iv) Plaintiff's claims for trademark infringement must be dismissed because there is no likelihood of confusion; and (v) Plaintiff's trademark dilution claims fail because Plaintiff has failed to adequately allege a famous mark. Dkt. 21 at 2. Because the Court finds that it lacks personal jurisdiction over Defendants, it need not reach Defendants' other asserted grounds for dismissal.

### A.  Personal Jurisdiction

As noted, Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. For the reasons set forth below, the Court will grant the motion to dismiss for lack of personal jurisdiction as to both Defendants.

#### 1.  Legal Standard

##### a.  In General

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). "That approach asks only whether the plaintiff has proffered facts that, if credited, would support all facts essential to personal jurisdiction." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022) (cleaned up). "It is [the plaintiff's] burden to proffer evidence 'sufficient to support findings of all facts essential to personal jurisdiction,' and to do so without relying on unsupported allegations." *LP Sols. LLC v. Duchossois*, 907 F.3d 95, 102 (1st Cir. 2018) (quoting *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016)). The Court "must accept [the plaintiff's] properly documented evidentiary proffers as true and construe them in the light most favorable to [the plaintiff's] jurisdictional claim." *A Corp.*, 812 F.3d at 58.

"Questions of specific jurisdiction are always tied to the particular claims asserted." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999).[1] Moreover, "the [specific] personal jurisdiction inquiry in federal question cases . . . differs from the inquiry in diversity cases," *Swiss Am.*, 274 F.3d at 618, thus requiring distinct analyses.

---

[1] Plaintiff does not appear to assert that this Court may exercise general jurisdiction over either Defendant.

4

b. **Federal Question**

Where the Court's subject matter jurisdiction is based on the presence of federal questions, specific jurisdiction requires satisfaction of a federal statute or rule authorizing service of process and comportment with the Due Process Clause of the Fifth Amendment. *Swiss Am.*, 274 F.3d at 618. "[U]nder the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." *Id.*; *see also Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024).

"In the mine-run of federal question cases, Federal Rule of Civil Procedure 4(k)(1) erects the framework for establishing personal jurisdiction by service of process." *Motus*, 23 F.4th at 121. "Under this framework, personal jurisdiction may derive either from a state long-arm statute that sets the boundaries of a state court's jurisdictional reach or from a federal statute permitting nationwide personal jurisdiction by service of process." *Id.* at 121–22.

2. **Analysis**

"Subject-matter jurisdiction in this case is premised chiefly on the existence of a federal question." *Id.* at 121. Because "the forum state is Massachusetts and there is no federal statute specially authorizing nationwide personal jurisdiction . . . we must look to the compendium of Massachusetts statutes." *Id.* at 122 (citing *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999)).

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, "sets out a list of specific instances in which a Massachusetts court may acquire personal jurisdiction over a nonresident defendant." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994). The statute "requires that the 'cause of action . . . aris[e] from' at least one of a list of acts or omissions related to Massachusetts." *Roch v. Mollica*, 481 Mass. 164, 167 (2019) (alterations in original). That is, the "inquiry asks whether there is a nexus between the defendant's in-State activities and the

plaintiff's legal claim(s)." *Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 315 (2018) (emphasis in original). "A plaintiff has the burden of establishing facts to show that the ground relied on under § 3 is present." *Id.* at 317 (quoting *Tatro*, 416 Mass. at 767).

"The reach of Massachusetts' long-arm statute . . . is not coextensive with what due process allows under the federal Constitution." *NRO Bos., LLC v. Yellowstone Cap. LLC*, 2020 WL 5774947, at *5 (D. Mass. Sept. 28, 2020) (citing *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 n.9 (2017)). Accordingly, "[e]ven where a party presents 'jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites' of the long-arm statute." *Sheldon v. DT Swiss AG*, 2023 WL 6201560, at *4 (D. Mass. Sept. 22, 2023) (quoting *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979)); *see also SCVNGR*, 478 Mass. at 329–30 ("The requirements of [the long-arm statute] may not be circumvented by restricting the jurisdictional inquiry to due process considerations.").

Plaintiff contends that Defendants' conduct falls within subsections (c) and (d) of the long-arm statute. Dkt. 25 at 10–11. Those subsections provide that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> . . .
>
> (c) causing tortious injury by an act or omission in this commonwealth; [or]
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Mass. Gen. Laws ch. 223A, §§ 3(c)–(d).[2]  The Court addresses each in turn, beginning with subsection (d).

### a.     Subsection (d)

Plaintiff asserts, with little further explanation, that "Massachusetts' long-arm statute reaches any party who causes tortious injury in the commonwealth through conduct aimed at the forum." Dkt. 25 at 10 (citing Mass. Gen. Laws ch. 223A, §§ 3(c)–(d)). Not so. Under subsection (d), a court may exercise personal jurisdiction over a defendant who caused "tortious injury" in Massachusetts through conduct occurring outside Massachusetts *only if* that defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [Massachusetts]." Mass. Gen. Laws ch. 223A, § 3(d).

The facts that Plaintiff has proffered, however, do not demonstrate that either Defendant *regularly* does or solicits business in Massachusetts; engages in any other *persistent* course of

---

[2] The parties have not analyzed the existence of personal jurisdiction with respect to each claim, but rather with respect to the claims collectively. Because the alleged facts underlying each of the Lanham Act claims (Counts 1 through 3) are similar, the Court analyzes them together.

7

conduct in Massachusetts; or derives *substantial* revenue from goods used or consumed or services rendered, in Massachusetts.³  Accordingly, subsection (d) is not applicable.

### b.     Subsection (c)

Nor does subsection (c) apply.  "Section 3(c) authorizes jurisdiction where the action arises from the defendant's 'causing tortious injury by an act or omission' in Massachusetts."  *Halks v. Kindley Firm, APC*, 766 F. Supp. 3d 295, 307 (D. Mass. 2025) (quoting Mass. Gen. Laws ch. 223A, § 3(c)).  "Section 3(c) 'is intended to apply only when the act [or omission] causing the injury occurs within the Commonwealth.'"  *Frederick v. United States Olympic Comm.*, 2022 WL 4356468, at *5 (D. Mass. Sept. 20, 2022) (alteration in original) (quoting *Hussain v. Rhode Island Hosp.*, 2019 WL 3546888, at *4 (D. Mass. June 12, 2019)).  "To give [§ 3(c)] any broader meaning would render § 3(d) a nullity."  *Id.* (alteration in original) (quoting *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972)).

Here, Defendants "did not 'caus[e] tortious injury by an act or omission in this commonwealth" as required under § 3(c).'"  *High Country Inv., Inc. v. McAdams, Inc.*, 221 F. Supp. 2d 99, 102 (D. Mass. 2002) (alteration in original).  Importantly, "the fact that any economic 'harm' is felt by [Plaintiff] in Massachusetts does not mean that infringement occurred here."  *Id.*; *see also Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) ("Although

---

³ Even recognizing that in some instances, having an interactive website could satisfy the requirements of the long-arm statute, *see, e.g.*, *Ching-Yi Lin v. TipRanks, Ltd.*, 2019 WL 6211246, at *3 n.3 (D. Mass. Nov. 21, 2019), "[t]he formal requirements of the Massachusetts long-arm statute must be interpreted so as to be consistent with constitutional [Fourteenth Amendment] due process requirements," *Nat'l Gypsum Co. v. Cont'l Brands Corp.*, 895 F. Supp. 328, 343 (D. Mass. 1995).  As set forth *infra*, under the circumstances, the operation of the website does not rise to the level of "purposeful availment" necessary to justify the exercise of jurisdiction.

To the extent Plaintiff points to other contacts—outside the interactive website—that Defendants have with Massachusetts, such as promoting and sponsoring the Boston Cup and hosting the East Coast Run, the Court concludes that those contacts demonstrate neither a persistent course of conduct nor the regular solicitation of business.  *Cf. Intellitech Corp. v. Inst. of Elec. & Elecs. Eng'rs*, 2017 WL 758487, at *9 (D.N.H. Feb. 27, 2017) ("Such contacts . . . constitute the sort of 'random, isolated, or fortuitous' contacts that [are] inadequate to give rise to personal jurisdiction.").

it is in the very nature of the internet that the allegedly infringing marks contained in these web sites can be viewed anywhere, this does not mean that the infringement occurred everywhere. Instead, courts have held that in the case of web sites displaying infringing marks the tort is deemed to be committed where the web site is created and/or maintained." (citing cases)). Plaintiff has adduced no facts suggesting that the alleged infringement occurred in Massachusetts, and subsection (c) therefore does not apply.

In addition, even assuming, *arguendo*, that the alleged infringement did occur in Massachusetts, "[t]he formal requirements of the Massachusetts long-arm statute must be interpreted so as to be consistent with constitutional [Fourteenth Amendment] due process requirements." *Nat'l Gypsum Co. v. Cont'l Brands Corp.*, 895 F. Supp. 328, 343 (D. Mass. 1995). "[J]urisdiction may only be exercised when the defendant acts in some way as to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (second alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also Trigg v. Penny Lane, Inc.*, 1987 WL 4966, at *2 (D. Mass. June 30, 1987) ("The reach of the Massachusetts long-arm statute is limited . . . by the requirement that the party subject to suit have purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (cleaned up)).[4]

---

[4] "While the relevant forum for the due process analysis is the United States, it is the contacts with the Commonwealth that are critical because its long-arm statute establishes this court's territorial limitation of effective service." *Stratus Techs. Bermuda Ltd v. EnStratus Networks, LLC*, 795 F. Supp. 2d 166, 168 (D. Mass. 2011); *see also Rancourt v. Meredith Corp.*, 2024 WL 381344, at *3 n.6 (D. Mass. Feb. 1, 2024) ("[W]here a federal statute . . . does not provide for nationwide service, the Court must conduct the same personal jurisdiction inquiry as in a diversity case, focusing on the defendant's contacts with Massachusetts rather than with the United States as a whole." (cleaned up)).

"When assessing whether a defendant's commercial operation of a website amounts to purposeful availment, we typically look to factors such as evidence of specific targeting of forum residents and evidence that the website has generated 'substantial revenue from forum residents.'" *Motus*, 23 F.4th at 125 (quoting *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 60 (1st Cir. 2020)).  Here, Defendants' "website does not contain content that is any more likely to solicit or serve customers in Massachusetts than anywhere else," *id.* at 123, and a stray reference to Massachusetts in the website's Refund Policy does not alter that conclusion, *cf. Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 36 (1st Cir. 2010) ("These four stray references to New Hampshire on MMC's website do not indicate that MMC intentionally uses its website to target New Hampshire residents.").  Nor has Plaintiff alleged any factual basis to conclude that the website has generated "substantial revenue" from Massachusetts residents.  Accordingly, under the circumstances, the Court concludes that Defendants are not subject to personal jurisdiction for Plaintiff's claims in Massachusetts.  *See DCM Sys., Inc. v. Tech. Trades Inst., Inc.*, 2014 WL 4804743, at *4 (D. Mass. Sept. 25, 2014) ("[T]he mere fact that [the defendant]'s alleged infringement caused injury to a company located in Massachusetts is insufficient, by itself, to satisfy the purposeful availment prong for any of [the plaintiff]'s causes of action.").[5]

### III.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

**So Ordered.**

Dated: June 13, 2025

/s/ Brian E. Murphy  
Brian E. Murphy  
Judge, United States District Court

---

[5] In light of the dismissal of the federal claims for lack of personal jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.